UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in compliance with D.N.J. LBR 9004-1(b)**
THE LAW OFFICES OF STEVEN D. PERTUZ, LLC
111 Northfield Avenue, Suite 304
West Orange, NJ 07052
(973) 669-8600
Attorneys for Debtor-in-Possession
*By: Steven D. Pertuz (SDP-5632)*
     *spertuz@pertuzlaw.com*

Chapter 11
(Subchapter V Small Business)

Hon. Michael B. Kaplan

In re:

SALVATORE FAENZA,

                              Debtor-in -Possession.

Case No.  25-14559

## SMALL BUSINESS DEBTOR'S
## PLAN OF REORGANIZATION

This Plan of Reorganization ("Plan") is presented to you to inform you of the proposed plan for restructuring the debts of the Debtor in the case captioned above, SALVATORE FAENZA, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

**Steven D. Pertuz, Esq.**
**Law Offices of Steven D. Pertuz, LLC**
**111 Northfield Avenue, Ste. 304**
**West Orange, NJ  07052**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR
_____ at _____ IN COURTROOM No. 8 AT:**

**United States Bankruptcy Court**
**402 East State Street**
**Trenton, NJ 08608**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

July 29, 2025

/s/ Steven D. Pertuz, Esq.
Law Offices of Steven D. Pertuz, LLC
111 Northfield Avenue, Ste. 304
West Orange, NJ  07052
(973) 669-8600
*Counsel to Salvatore Faenza*

# TABLE OF CONTENTS

Summary of the Plan and Distributions to Creditors

ARTICLE 1 – History of the Business Operations of the Debtor
    1.1    Nature of the Debtor's Business
    1.2    History of Business Operations of the Debtor
    1.3    Filing of the Debtor's Chapter 11 Case
    1.4    Legal Structure and Ownership
    1.5    Debtor's Assets
    1.6    Debtor's Liabilities
    1.7    Current and Historical Financial Conditions
    1.8    Events Leading to the Filing of the Bankruptcy Case
    1.9    Significant Events During the Bankruptcy Case
    1.10    Projected Recovery of Avoidable Transfers

ARTICLE 2 – The Plan
    2.1    Unclassified Claims
        A.    Administrative Expenses
        B.    Priority Tax Claims
    2.2    Classes of Claims and Equity Interests
        A.    Classes of Secured Claims
        B.    Classes of Priority Unsecured Claims
        C.    Classes of General Unsecured Claims
        D.    Classes of Equity Interest Holders
    2.3    Estimated Number and Amount of Claims Objections
    2.4    Treatment of Executory Contracts and Unexpired Leases
    2.5    Means for Implementation of the Plan
    2.6    Post-confirmation Management
    2.7    Tax Consequences of the Plan
    2.8    Projections in Support of Debtor's Ability to
        Make Payments Under the Proposed Plan

ARTICLE 3 – Feasibility
    3.1    Ability to Initially Fund Plan
    3.2    Ability to Make Future Payments and Operate
        Without Further Reorganization

ARTICLE 4 – Liquidation Analysis

ARTICLE 5 – Discharge

ARTICLE 6 – General Provisions
    6.1    Title to Assets
    6.2    Binding Effect
    6.3    Severability
    6.4    Retention of Jurisdiction by the Bankruptcy Court
    6.5    Captions
    6.6    Modification of Plan
    6.7    Final Decree

ARTICLE 7 – Attachments

ARTICLE 8 – Frequently Asked Questions

ARTICLE 9 – Definitions

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Debtor, SALVATORE FAENZA (the "Debtor or "FAENZA"), proposes the plan set forth herein.

The Debtor proposes to pay all allowed Administrative Claims in full on the Effective Date of the Plan.

The Debtor proposes to pay the claims of all allowed and undisputed Priority Claims in full on the Effective Date of the Plan or within ten (10) days from the Effective Date of the Plan.

The Debtor proposes to separately classify the Lendbug, Inc. ("Lendbug") Secured Claim 12-1 as this claim has a perfected UCC-1 blanket lien on the Debtor's personal and business assets. Lendbug and the Debtor's business, The Skillet By Sal, Inc., have agreed on terms to settle Lendbug's claim as to the business liability only, and the payments made pursuant to the outside settlement as to The Skillet By Sal, Inc. are to be credited and shall simultaneously reduce Lendbug's claim in this bankruptcy case as it is the same liability to the Debtor individually. Lendbug shall update its filed claim and reduce the claim every three months (quarterly) pursuant to payments made as per the settlement with The Skillet By Sal, Inc and to this Plan.

The Debtor proposes to reclassify the Sumitomo Mitsui Finance and Leasing Co. ("Sumitomo") Secured Claim 15-1, as a general unsecured claim since the Debtor is a personal guarantor of this debt and the filed UCC-1 perfecting Sumitomo's security interest is against all assets of International Gourmet Foods, LLC and not the Debtor personally.  The Debtor does intend to maintain regular payments outside of the Plan as the equipment is necessary for the Debtor's regular business operations.

The Debtor proposes to separately classify the Ferrari Financial Services, Inc. ("Ferrari") Secured Claim 28-1, which is secured by a lien covering the Debtor's proposed interest in a 2023 Ferrari SF 90 Stradale sportscar,  and surrender the vehicle and any interest of the Debtor to the lienholder and treat the balance of the claim as a disputed claim that is subject to further investigation and discovery through litigation, via Adversary Proceeding, against Chenging Exotics LLC, Kim A. Aiello, Brian Paige, individually and as finance director for Ferrari Financial Services, Ferrari Financial Services, Inc., and Michael Vitacco, to fix and determine the amount due on the disputed general unsecured claim (the "Ferrari Litigation"). Debtor is also consenting to relief from the automatic stay to allow Ferrari to pursue the recovery of its collateral.  Debtor has confirmed in his schedules and via 341(a) testimony that he has never seen, possessed or paid for this vehicle at any time and was involved in a fraudulent "straw buyer" transaction.  The balance of any general unsecured deficiency claim owed to Ferrari shall be dependent on the outcome and recovery made in connection with the litigation. Debtor has disclosed to Ferrari that the vehicle is potentially garaged at the home of Kim A. Aiello at 11 Palace Court, Monroe Township, NJ 08831 or the home of Michael Vitacco at 3 Nicholas Avenue, Monroe, NJ 08831.

The Debtor proposes to repay the allowed Claims of Amboy Bank and OceanFirst Bank, which are secured by a mortgage covering the Individual Debtor's residence, and the allowed Claim of Ally Financial, which is secured by a lien covering the Individual Debtor's 2021 Acura ILX, in compliance with the notes, mortgage and/or other loan documents forming the basis of the claims.

3

The Debtor proposes to repay the allowed Claim of Allstate Realty LLC, which is secured by a mortgage covering the Debtor's real property located at 39 Spyglass Drive, Jackson, NJ ("Spyglass"), via a sale as Spyglass is currently under contract for $425,000.00 (strictly "as is") with a tentative closing date of September 3, 2025. Realtor to be retained as a professional and balance of net sale proceeds to be contributed into Debtor's Chapter 11 Plan for the benefit of his creditors and the bankruptcy estate.

The Debtor proposes to treat all other allowed claims against the Debtor, as general unsecured claims under Bankruptcy Code Sec. 506(a), at least ***no less than 71% Dividend, pro rata, to allowed and accepted claims***.

The Plan will be funded by the income derived from FAENZA's 100% ownership in business operations of The Skillet By Sal, Inc. and Faenza's Gourmet Market, the sale of Debtor's real property located 39 Spyglass Drive, Jackson, NJ and also any recovery in the Ferrari Litigation. Debtor is also considering selling Faenza's Gourmet Market and use any net sale proceeds of this sale to assist with funding the Plan. The Debtor is having discussions with several potential interested parties on this potential sale option for Faenza's Gourmet Market.

### ARTICLE 1
### HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

**1.1.     Nature of the Debtor's Businesses.**

The Debtor is an individual that resides in a single-family residence located at 7 Dancer Lane, Freehold, NJ 07728.  He currently operates 2 food related businesses in Monmouth County NJ.  The Debtor's primary business, The Skillet By Sal, Inc., is an S Corporation created in 2021 and it operates a breakfast and lunch café at 300 Mounts Corner Drive, Freehold, NJ.  The Debtor is the sole 100% shareholder of this business.  The Debtor's second business is Faenza's Gourmet Market, LLC created in March of 2024.  This is an Italian deli located at 184 US Highway 9, Englishtown, NJ.  The Debtor is the sole member and 100% owner of this business.   All of the Debtor's income is derived from these two businesses.

**1.2.     History of Business Operations of the Debtor.**

As more fully explained in Section 1.7 below, over the last 30 years the Debtor has been involved in the restaurant and Italian specialty and Italian gourmet foods industry and has had several successful businesses over that time frame, most notably Tuscany Italian Markets which the Debtor sold in 2018.  However, as with what many small business owners experienced during the Covid-19 Pandemic, the Debtor's business operations suffered from 2020 through 2023 and the Pandemic's effects have continued to linger into today which have caused the Debtor many financial difficulties but also forced the Debtor to overcome many challenges in the interim.

The Skillet by Sal, Inc. officially opened its doors in April of 2022.  It is primarily a breakfast and lunch café that operates from 8:00 am to 3:00 pm every day.  If focuses on providing delicious organic food sourced from local farmers in the area.  Sales have increased every year since it opened its doors and last year gross sales were an estimated 2.8 million dollars. 2024 taxes are still being prepared and finalized.

Faenza's Gourmet Market officially opened its doors in September 2024 and it focuses on cold cuts, prepared Italian foods, salads, butchered meats and catering. It is open every day typically from 8:30 am to 6:30 pm.  The business has struggled since opening and it has only recently started covering it operating expenses and it is not yet profitable but the Debtor believes brighter days are ahead as the summer months have seen a positive influx of catering orders and more foot traffic so the Debtor believes it is finally turning the corner to profitability as more customers in the area are becoming more familiar with the quality foods provided.

### 1.3    Filing of the Debtors' Chapter 11 Cases.

On April 30, 2025, FAENZA filed a petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code.

### 1.4.   Legal Structure and Ownership.

The Debtor is a self-employed individual that operates two businesses as mentioned above. He holds 100% ownership interest in both businesses and actively manages both businesses on a daily basis.  He has over 30 years in the restaurant and Italian specialty and Italian gourmet foods industry and has had several successful businesses over that time frame, most notably Tuscany Italian Markets which the Debtor sold in 2018.

### 1.5.   Debtors' Assets.

The following is a summary of the Debtor's assets and their value as of the petition date:

FAENZA:

| | |
|---|---|
| Real Property – Primary Residence: <br> 7 Dancer Lane, Freehold, NJ <br> Jointly owned with Non-Filing Spouse Nancy <br> Faenza <br> (per appraisal report attached as **Exhibit C**) | $1,595,000.00 |
| - Inherited Property: <br> 39 Spyglass Drive, Jackson, NJ <br> Fee Simple <br> Currently Under Contract at $425,000.00 <br> (As Is and Best Offer To Date, Contract attached as **Exhibit C**) | $ 475,000.00 |
| Vehicle: <br> 2021 Acura ILX (50,000 Miles) | $ 15,000.00 |
| Household items: <br> Household furnishings | $ 12,000.00 |
| Giulio Bernadelli Custom Shotgun | $   1,000.00 |

5

| | | |
|---|---|---|
| Clothing | $ | 1,000.00 |
| | | |
| Financial Assets: | | |
| Cash & Deposits Personal Bank Accounts | $ | 00.00 |
| Term Life Insurance (Death Benefit Only) | $ | 00.00 |
| Whole Life Insurance Policies (2) | $ | 5,000.00 |
| | | |
| Business Interests Currently Operating: | $ | Unknown |
| The Skillet By Sal, Inc. (100% Shareholder) | | |
| 2024 Estimated Gross Sales $2,800,000.00 | | |
| 2024 Taxes Being Completed | | |
| | | |
| Faenza's Gourmet Market, LLC (100% Ownership) | $ | Unknown |
| Opened Its Doors September of 2024 | | |
| 2024 Estimated Gross Sales $300,000.00 | | |
| 2024 Taxes Being Completed | | |
| | | |
| Other: | | |
| Recovery from Ferrari Litigation | $ | Unknown |

**1.6.    Debtors' Liabilities.**

**SALVATORE FAENZA – Filed And/Or Allowed Secured
Claims (Includes All Listed Claims
As Secured But Are Undersecured Or Are To Be Reclassified.
The Below Liabilities Are Subject To Be Updated, If Necessary,
Prior To Confirmation.**

| Claimant and Collateral Description | Asserted Amount |
|---|---|
| Amboy Bank (1st Mortgage on 7 Dancer Lane, Freehold) | $145,000.00 |
| Ocean First Bank (2nd Mortgage on 7 Dancer Lane, Freehold) | $ 47,532.47 |
| Allstate Realty LLC (Mortgage on 39 Spyglass, Jackson) | $285,000.00 |
| Ally Financial (Lienholder on 2021 Acura ILX) | $ 19,934.15 |
| LendBug, Inc. (UCC-1 Lien on Household Goods & Furnishings) | $ 69,354.00 |
| Ferrari Financial Services Inc. (Lienholder on 2023 Ferrari SF 90 Stradale, claim is disputed) | $469,913.36 |
| Sumitomo Mitsui Finance and Leasing Co. (Lien on Business Equipment Debt to be reclassified as unsecured personal guaranty) | $ 44,091.65 |

**SALVATORE FAENZA – Filed And Allowed Unsecured Claims**
**The Below Liabilities Are Subject To Be Updated, If Necessary, Prior**
**To Confirmation.**

| | | |
|---|---|---:|
| American Express (Business Credit Card) | $ | 1,398.00 |
| American Express (Business Credit Card) | $ | 995.65 |
| American Express (Business Credit Card) | $ | 3,604.99 |
| American Express  (Business Credit Card) | $ | 10,958.50 |
| American Express (Business Credit Card) | $ | 4,552.95 |
| American Express (Credit Card) | $ | 24,379.23 |
| American Express (Credit Card) | $ | 29,387.07 |
| Ascentium Capital (Guarantee on Business Debt) | $ | 34,575.36 |
| Ascentium Capital (Guarantee on Business Debt) | $ | 35,737.00 |
| Bank of America (Guarantee on Business Debt) | $ | 2,285.88 |
| Bank of America (Credit Card) | $ | 170.00 |
| Capital One Bank (Credit Card) | $ | 12,000.00 |
| Chase Bank (Business Credit Card) | $ | 10,476.31 |
| Chase Bank (Business Credit Card) | $ | 29,984.97 |
| Chase Bank (Business Credit Card) | $ | 19,560.93 |
| Chase Bank (Credit Card) | $ | 7,602.54 |
| Citi Cards (Credit Card) | $ | 14,000.00 |
| Citi Cards (Credit Card) | $ | 733.00 |
| Citi Cards (Credit Card) | $ | 2,400.00 |
| Discover Bank (Credit Card) | $ | 10,743.18 |
| Farmers Federal Credit Union (Business Line of Credit Liability) | $ | 12,000.00 |
| Prosper Funding (Guarantee on Business Debt) | $ | 22,000.00 |
| Prosper Funding (Guarantee on Business Debt) | $ | 9,925.00 |
| SoFi Bank, N.A (Guarantee on Business Debt) | $ | 8,839.54 |
| SoFiBank, N.A.  (Guarantee on Business Debt) | $ | 9,300.00 |
| Synchrony Bank (Credit Card) | $ | 1,721.19 |
| Synchrony Bank (Credit Card) | $ | 2,080.61 |
| Synchrony Bank (Credit Card) | $ | 5,897.79 |
| Unique Funding Solutions, LLC (Guarantee on Business Debt) | $ | 138,260.50 |
| UpStart Network, Inc. (Guarantee on Business Debt) | $ | 36,202.41 |
| US Department of Education (Student Loan Liability) | $ | 114,000.00 |
| Vincent LaFranca (Plaintiff on Business Buyout Litigation, Disputed) | $ | Unknown |
| Wells Fargo Bank (Guarantee on Business Debt) | $ | 28,951.02 |
| Wells Fargo Bank (Credit Card) | $ | 8,196.96 |
| Wells Fargo Bank (Guarantee on Business Debt) | $ | 28,384.19 |
| Wells Fargo Bank (Credit Card) | $ | 6,887.74 |
| Wells Fargo Bank (Credit Card) | $ | 255.00 |
| NJ Division of Taxation (Estimated Priority To Be Updated) | $ | Unknown |
| Internal Revenue Service (Estimated Priority To Be Updated) | $ | Unknown |

### 1.7.    <u>Current and Historical Financial Conditions.</u>

The Debtor's primary business, The Skillet By Sal, Inc., had gross sales of $2,217,830.00 in year 2023 and approximately $2,800,000.00 in 2024 as the Corporate Tax Return is still being finalized with the proposed retained accountant. Sales revenue and income remain robust for the current year 2025 and the Debtor remains confident that with an approved Plan, revenue and profits will only increase as the stability of the plan payments will allow for the Debtor to focus on his business operations and to generate more revenue. Gross revenue for 2025 over the first two quarters is approximately $1,400,000.00.00 so 2025 projected revenue is on pace to exceed $3,000,000.00.

Faenza's Gourmet Market has only been open for approximately ten (10) months and has struggled covering its expenses but the Debtor believes brighter days are ahead as the summer months have seen a recent positive influx of catering orders and more foot traffic so the Debtor believes it is finally turning the corner to profitability as more customers in the area are becoming more familiar with the quality foods provided. Gross sales from September 2024 to December 2024 were approximately $300,000.00 and gross sales for the first two quarters of 2025 were approximately $300,000.00.  The Debtor is also having discussions with several potential interested parties on a potential sale option for Faenza's Gourmet Market.  Further information shall be provided prior to any hearing on confirmation.

Historically, the Debtor previously owned Tuscany Italian Specialties with stores in Manalapan, Jackson, Marlboro and Old Bridge, NJ for over twenty years where it was an Italian grocery store offering prepared foods, sandwiches and catering. The business was profitable for many years until it was sold in 2019. The Debtor thereafter found a new location for an organic Italian gourmet food deli concept and ordered most of the needed equipment from Italy and renovations began but the Covid-19 Pandemic affected normal life as we know it and all business came to an abrupt halt by Order from the Governor of New Jersey.  The needed machinery and equipment was stuck overseas in Italy for more than a year and the needed renovations took three times as long as materials were scarce and workers stayed home. The Debtor's new Landlord unfortunately passed away during this time and a management company was hired by the Landlord's estate and sought to void the Lease.

The Debtor vacated that location after spending tens of thousands of dollars on renovation and equipment costs and also on attorney's fees.  A Freehold location was thereafter available and this was where The Skillet By Sal ("Skillet") was born.  The cost and time to open up the Skillet in April of 2022 was challenging as materials were twice as expensive and the time to complete the renovations took twice as long. As equipment was coming in from Italy, finance and lease payments became due before the Skillet was open and the Debtor's reserves soon were depleted paying for rent, renovations, materials and equipment before a penny ever being made. When Faenza's Gourmet Market opened up it was also losing money and cash flow became a problem. The Debtor started borrowing money to cover the shortfall but the shortfall kept on getting larger and larger and the Debtor turned to merchant cash advance lenders and their weekly ACH payment withdrawals became too overwhelming and the Debtor ended up in litigation when he defaulted on these payments.

8

**1.8.   Events Leading to the Filing of the Bankruptcy Cases.**

In furtherance of the statements above, the Debtor and his businesses were in several pending litigation matters with merchant cash advance companies in Connecticut and New York and in a lawsuit with his old partner from Tuscany Italian Specialty in the Superior Court of New Jersey. Settlement attempts were made in these litigation cases but an agreement never developed. The Debtor determined that seeking bankruptcy protection would enable him to continue is business operations, stabilize cash flow and reorganize his debts.  On April 30, 2025, FAENZA filed a petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code bearing case number 25-14559.

**1.9.   Significant Events During the Bankruptcy Case.**

On or about May 8, 2025, the Office of the United States Trustee appointed Nicole M. Nigrelli, Esq. to serve as Subchapter V Trustee in the FAENZA case. On May 22, 2025, the Bankruptcy Court entered an order authorizing the retention of Steven D. Pertuz, LLC as counsel to FAENZA. On June 9, 2025, the Debtor appeared at its Initial Debtor Interview and 341(a) Meeting of Creditors. On June 18, 2025, the Debtor filed his Status Report and on June 26, 2025, the Court held a Status Conference in this matter and counsel for the Debtor reported the status of the case to this Court.

All post-petition obligations are being met and monthly operating reports have been filed.  The Debtor will be retaining his accountant, a real estate closing attorney and a real estate broker professional as the Spyglass property is currently under contract to sell.

**1.10.   Projected Recovery of Avoidable Transfers.**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions but has disclosed the Ferrari Litigation as a claim that will be pursued.

# ARTICLE 2

## THE PLAN OF REORGINZATION (THE "PLAN")

The Debtor's Plan (the "Plan") must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-

half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

## 2.1.    <u>Unclassified Claims.</u>

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and his trade Creditors.

2.    If the Debtor received goods he has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |

| | | |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | To be paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Administrative Tax Claim | $0.00 | To be paid in full on the Effective Date. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | To be paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Subchapter V Trustee's fees and expenses | $TBD | Upon application under § 330 and after Bankruptcy Court approval, to be paid in full upon the later of the Effective Date, or (2) allowance of the administrative expense. |
| Allowed fees and expenses of Debtor's professionals | $TBD | Upon application under § 330 and after Bankruptcy Court approval, to be paid in full upon the later of the Effective Date, or (2) allowance of the administrative expense, or (3) according to a separate agreement between the Debtor and professional. |
| Clerk's Office fees | $0.00 | To be paid in full on the Effective Date. |
| Other Administrative Expenses | $0.00 | To be paid in full on the Effective Date or according to separate written agreement. |

B.      Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| NJ Division of Taxation | Unknown and Proof of Claim | 2025 | In the event that any priority tax claims are allowed against the |

11

| | has yet to be filed but this is subject to change once the 2024 Taxes are completed and filed. | | Debtor, the Debtor will pay the allowed claims in full within ten (10) days from the Effective Date. |
|---|---|---|---|
| Internal Revenue Service | Unknown and Proof of Claim has yet to be filed but this is subject to change once 2024 Taxes are completed. | 2025 | In the event that any priority tax claims are allowed against the Debtor, the Debtor will pay the allowed claims in full within ten (10) days from the Effective Date. |

**2.2    Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.    Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The following chart lists all classes containing the Debtors' secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Amboy Bank, 1st Mortgage Lender on 7 Dancer Lane, Freehold, NJ 07728 | No | No | Debtor to stay in compliance with the notes, mortgage and/or other loan documents forming the basis of the claim and stay current with payments as they become due. |
| 1 | Ocean First Bank, 2nd Mortgage Lender on 7 Dancer Lane, Freehold, NJ 07728 | No | No | Debtor to stay in compliance with the notes, mortgage and/or other loan documents forming the basis of the claim and stay current with payments as they become due. |

| 1 | AllState Realty, LLC Mortgage Lender on 39 Spyglass Drive, Jackson, NJ 08527 | No | No | Debtor to stay in compliance with the notes, mortgage and/or other loan documents forming the basis of the claim and stay current with payments as they become due. Total claim will also be pain in full in connection with sale of real property in September 2025. |
|---|---|---|---|---|
| 1 | Ally Capital Lienholder on 2021 Acura ILX | No | No | Debtor to stay in compliance with the notes, mortgage and/or other loan documents forming the basis of the claim and stay current with payments as they become due. |
| 2 | LendBug, Inc. UCC-1 Lien on Debtor's Personal Belongings Along With Debtor's Business Assets | No | Yes | LendBug, Inc. has a perfected UCC-1 blanket lien on the Debtor's personal and business assets. Lendbug and the Debtor's business, The Skillet By Sal, Inc., have agreed on terms to settle Lendbug's claim as to the business liability only, and the payments made pursuant to the outside settlement as to The Skillet By Sal, Inc. are to be credited and shall simultaneously reduce Lendbug's claim in this bankruptcy case as it is the same liability. Lendbug shall update its filed claim and reduce the claim every three months (quarterly) pursuant to payments made as per the settlement with The Skillet By Sal, Inc. Debtor to pay $500.00 x 60 months from the effective date to satisfy Lendbug's Claim. In the alternative, the Debtor reserves the right to payoff the settled balance of LendBug Inc.'s claim within 30 days of the sale of 39 Spyglass Drive, Jackson |

| | | | | |
|---|---|---|---|---|
| | | | | from the Debtor's net sale proceeds. |
| 3 | Sumitomo Mitsui Finance and Leasing UCC-1 on Business Assets only of defunct business International Gourmet Foods, LLC. Debtor is personal guarantor of this debt. | No | Yes | The Debtor proposes to reclassify the Sumitomo Mitsui Finance and Leasing Co. ("Sumitomo") Secured Claim 15-1, as a general unsecured claim since the Debtor is a personal guarantor of this debt and the filed UCC-1 perfecting Sumitomo's security interest is against all assets of International Gourmet Foods, LLC and not the Debtor personally. The Debtor does intend to maintain regular payments outside of the Plan as the equipment is necessary for the Debtor's business operations at The Skillet By Sal, Inc. |
| 4 | Ferrari Financial Services, Inc. Lienholder on 2023 Ferrari SF 90 Stradale The whereabouts for this vehicle are unknown by the Debtor as claim is disputed. | No | Yes | Debtor to surrender any interest in the vehicle to the lienholder and treat the balance of the claim as a disputed claim that is subject to further investigation and discovery through litigation, via Adversary Proceeding, against Chenging Exotics LLC, Kim A. Aiello, Brian Paige, individually and as finance director for Ferrari Financial Services, Ferrari Financial Services, Inc., and Michael Vitacco, to fix and determine the amount due on the disputed general unsecured claim (the "Ferrari Litigation"). Debtor is also consenting to relief from the automatic |

| | | | | stay to allow Ferrari to pursue the recovery of its collateral. Debtor has confirmed in his schedules and via 341(a) testimony that he has never seen, possessed or paid for this vehicle at any time and was involved in a fraudulent "straw buyer" transaction. The balance of any general unsecured deficiency claim owed to Ferrari shall be paid and dependent on the outcome and recovery made in connection with the litigation. Debtor has disclosed to Ferrari that the vehicle is potentially garaged at the home of Kim A. Aiello at 11 Palace Court, Monroe Township, NJ 08831 or the home of Michael Vitacco at 3 Nicholas Avenue, Monroe, NJ 08831. The vehicle can also most likely be recovered using the Ferrari theft protection satellite GPS services typically installed on such vehicles. |
|---|---|---|---|---|

B.    Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The Debtors do not believe that any party holds any unsecured claim entitled to priority under Bankruptcy Code Secs. 507(a)(1), (4), (5), (6), or (7). In the event that such a claim is asserted, however, the Debtors places such claims in Class 5 and proposes to treat them as follows:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **5** | Unsecured Claims entitled to Priority under Bankruptcy Code Secs. 507(a)(1), (4), (5), (6), or (7) | Unimpaired | Debtors propose to pay the full amount of necessary to repay the claims in cash on the Effective Date. |

C.     Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class[es] 3, which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 6 | General Unsecured Allowed and Filed Undisputed Claims | Impaired | Claimants to share *pro rata* in a total fund of $520,000.00 (Projected Disposable Business Income Plus Portion of Sale Proceeds of 39 Spyglass Drive, Jackson, NJ, To Be Updated Prior To Plan Confirmation To Determine Extent of Allowed Filed Claims).  The Debtor will contribute that amount over a five-year term in the following manner: <br><br> 1. Commencing 30 days after the Effective Date, for a period of 60 months, the Debtor will make the following monthly payments toward the fund for payment of Class 6 Claims: <br><br> -    Months 1 – 60:  $8,666.66 per month; <br><br> *Estimated percentage of claims paid:* No Less Than 71% |

D.     Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| | Not Applicable In Individual Debtor Case | | |

## 2.3.    Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| 4 | Ferrari Financial Services, Inc. | $469,913.36 |
| 6 | Vincent LaFranca | Unknown As Claim Is Not Filed And Is Disputed |

## 2.4.    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraph below explains the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

[  ] Rejection of Executory Contracts and Unexpired Leases.

To the extent that parties identified below hold Executory Contracts or Unexpired Leases with the Debtor, they shall be rejected. Rejection means that the Debtor has elected to not continue to perform the obligations under such contracts or unexpired leases, and shall not cure defaults of the type that must be cured under the Bankruptcy Code, if any.

| Party | Item Leased | Treatment Is Pending |
|---|---|---|
| Not Applicable | The Debtor is an individual and there are no current leases where the Debtor is the Tenant of any Unexpired Lease or holder of an Executory Contract | Not Applicable |
| | | |

If you object to the assumption of your unexpired lease or executory contract, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

## 2.5.    **Means for Implementation of the Plan**

The Debtor, FAENZA, will fund the payments to Classes 1, 2, 3, 5 and 6 by income from normal business operations of the Debtor's 2 operating businesses.  Payments to Class 4 shall depend on the Ferrari Litigation and any recovery therein as the Debtor's interest in the collateral is being surrendered and Debtor consents to relief from the Automatic Stay.

The Debtor, FAENZA, will fund the payments to all administrative and priority claims, by (1) normal business operations of the Debtor's 2 operating businesses; and (2) the Debtor has begun to allocate funds for Plan Confirmation ("Plan Confirmation Fund") and said funds will be available for payment of administrative and priority claims to initially fund the Plan.

On Confirmation of the Plan, FAENZA, will retain all of his tangible and intangible property not otherwise dedicated by this Plan, including, without limitation, personal property, clothing, licenses, receivables, furniture, fixtures and equipment will revert, free and clear of all claims and equitable interests except as provided in the Plan, to the Debtor. The Debtor, FAENZA, expects to have sufficient cash on hand to make the payments required on the Effective Date.

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

## 2.6.    **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

Debtor is an individual and will retain his 100% ownership interest in his 2 operating businesses.  His income will remain the same as he currently takes a draw of $3,200.00 per week along with his wife's W-2 income.

## 2.7.    **Tax Consequences of the Plan.**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

18

Tax consequences to the Debtor: The Debtor may incur tax liability on income received post-confirmation and utilized to fund the plan.

Tax Consequences to the Creditors: The Debtor CANNOT and DOES NOT make any representation to the holders of claims regarding the of the Plan. The Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

### 2.8.    Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

The Debtor's projections of the Debtor's future revenue, budget and ability to make payments shall be provided prior to the confirmation date supporting the proposal to fund the payments required by the Plan after the Effective Date.  The budget will be provided and attached hereto as **Exhibit A.**

### ARTICLE 3

### FEASIBILITY

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.    Ability to Initially Fund Plan.

The Debtor believes that it will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.  FAENZA has allotted a Plan Confirmation Fund and shall contribute to same over the next eight (8) weeks to demonstrate its ability to make the payments to Administrative Claims and Creditors required by the Plan.

To make the payments under the Plan on the Effective Date to the Administrative and Priority Class 5 Creditors, the Debtor shall have at least $10,000.00 or more available in deposit accounts (Subject To Change Prior To Confirmation Hearing).

### 3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan. They have provided or shall provide projected financial information before the confirmation hearing and objection deadline. Those projections are listed in **Exhibit A**.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4

## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit B**.

## ARTICLE 5

## DISCHARGE

If the Plan is confirmed under Code Sec. 1191(a), on the Confirmation Date of this Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in Sec. 1141(d) of the Bankruptcy Code. If the Plan is confirmed under Sec. 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtors a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6

## GENERAL PROVISIONS

### 6.1.    Title to Assets.

If a plan is confirmed under Sec. 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under Sec. 1191(b), property of the estate includes, in addition to the property specified in Sec. 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 12 of the Bankruptcy Code, whichever occurs first.  Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.   **Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.   **Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.   **Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5.   **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.   **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to Sec. 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Sec. 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7.   **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree

to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7

## ATTACHMENTS

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[X] Debtor's projected monthly income (to be provided), annexed hereto as **Exhibit A**.
[X] Liquidation Analysis, annexed as **Exhibit B**.
[X] Appraisal/Valuation of Debtor's Real Property, annexed as **Exhibit C.**

## ARTICLE 8

## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I am in an Impaired Class?** Section 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is_____.Ballots should be mailed to the following addresses:

Law Offices of Steven D. Pertuz, LLC
111 Northfield Avenue, Ste. 304
West Orange, NJ  07052

**How Do I Determine When and How Much I Will Be Paid?** In Section 2.2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

# ARTICLE 9
## DEFINITIONS

**9.1.**     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.**     **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.**     **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.**     **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5**     **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.**     **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.**     **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.**     **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim and filed with the Bankruptcy Court, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.    Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.    Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.    Chapter 11 Case(s)**: The above-captioned case under chapter 11 of the Bankruptcy Code in which SALVATORE FAENZA is the Debtor-in-Possession.

**9.15    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.** **Confirmation Hearing**: The hearing to be held on_____, 2025 to consider confirmation of the Plan.

**9.20.** **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.** **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.** **Debtor** and **Debtor-in-Possession**: SALVATORE FAENZA, the debtor-in-possession in this Chapter 11 Case.

**9.23.** **Disputed Claim:** Any claim against one or more of the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.** **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.** **Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a Chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.** **Equity Interest**: An ownership interest in the Debtor. Not applicable in Individual Chapter 11 cases.

**9.27.** **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.** **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.** **IRC**: The Internal Revenue Code

**9.30.** **Petition Date**: April 30, 2025, the date the Chapter 11 petition for relief was filed.

**9.31.** **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.** **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

9.33.    **Reorganized Debtor**: The Debtor after the Effective Date.

9.34.    **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

9.35.    **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

9.36.    **Trustee**: Nicole M. Nigrelli, Esq., the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

9.37.    **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.


Date: 7/29/25                        /s/ Salvatore Faenza
                                       SALVATORE FAENZA