**MOREMLS**
**RIGHT TO SELL AGREEMENT OR RIGHT TO RENT/LEASE AGREEMENT**

OWNER(S)___*SALVATORE FAENZA*___

OWNER'S ADDRESS ___*9 DANCER LANE, FREEHOLD, NJ*___ PRIMARY PHONE _____

OWNER'S EMAIL _____ ALT PHONE _____

LISTING AGENCY ___*COLDWELL BANKER REAL*___ AGENCY PHONE ___*732-462-4242*___

LISTING AGENT ___*KEVIN WARD*___ AGENT PHONE ___*732-915-4848*___ AGENT EMAIL ___*KEVIN WARD REALTOR @ GMAIL.COM*___

1. **AGENCY DISCLOSURE:** I, ___*KEVIN WARD*___, as an authorized representative of ___*COLDWELL BANKER REAL*___
_____ (the "Listing Broker"), intend to work with the Owner, as of this time, as: (choose all that apply)

   ☑ Seller's/Landlord's agent.
   ☑ Disclosed dual agent if the opportunity arises.
   ☐ Disclosed dual agent with designated agency if the opportunity arises.

2. **ADDRESS, TERMS and TYPE:** In consideration of the services to be performed by the Listing Broker, the Owner (meaning one or more owners) hereby grants the Listing Broker the right to sell the property known as *39 SPYGLASS DRIVE, JACKSON, NJ 08527* *489,900* _____ (the "Property") at a price of $ _____, and/or to lease the Property at a monthly rental rate of $ *N/A* _____. The Owner agrees to assist and fully cooperate in the sale or lease of the Property, including granting the Listing Broker the right to advertise the Property.

   The right to sell, lease/rent, shall begin on ___*MARCH 10, 2026*___ (the "Commencement Date") and shall expire on midnight of ___*SEPT. 10, 2026*___ (the "Expiration Date"), subject to any protection periods described herein, but this Agreement is binding on the parties and in full force and effect as of the date it is signed by the parties. Listing Broker and the Owner agree that no marketing or showing of the Property may occur until the Commencement Date. The date of signing through the Expiration Date is called the "Term" of this agreement.

   If Owner directs Broker not to cooperate at all with other brokers, Owner must execute a Waiver of Broker Cooperation Form.

   The Owner hereby grants the Listing Broker: (choose one)
   a. [✓] the sole and exclusive right to sell; or
      EXCLUSIVE RIGHT TO SELL:
      i. the Owner represents that the Property is not listed in any manner with any other broker or subject to any protection period for any listing agreement with another broker that will not terminate upon the signing of this Agreement;
      ii. the Owner agrees to refer to the Listing Broker every person or entity who contacts the Owner about this listing or the sale or leasing/renting of the Property and that all negotiations shall be made through the Listing Broker; and
      iii. the Listing Broker agrees to use his/her best efforts to obtain a buyer or lessee for the Property and a notice on the Property will be circulated on MOREMLS Multiple Listing Service ("MOREMLS"), in accordance with its Rules and Regulations. The Listing Broker will not submit any notice stating whether the Owner has authorized compensation to a cooperating broker, if approved by the Owner, or the amount of any such compensation for display on the MOREMLS.

   b. [ ] the non-exclusive right to sell
      NON-EXCLUSIVE RIGHT TO SELL:
      i. the Owner represents that the Property is not presently exclusively listed with any other broker or subject to any protection period for any exclusive listing agreement with another broker that will not terminate upon signing this agreement; and
      ii. the Owner is hereby made aware that, pursuant to MOREMLS Rules and Regulations, non- exclusive listings will not be circulated or disseminated on the MOREMLS (Multiple Listing Service).

3. **AUTHORIZATION:** Each person signing this agreement as Owner represents that they are either an owner or authorized by the Owner to sign this agreement, have the legal right to sell, lease, or exchange the Property and can and will convey good and marketable title to the Property. The Owner acknowledges receipt of the Summary of the NJ Law Against Discrimination, as well as the Consumer Information Statement on New Jersey Real Estate Relationships.

4. **COMPENSATION:**
   AS THE OWNER, YOU HAVE THE RIGHT TO INDIVIDUALLY REACH AN AGREEMENT ON ANY FEE, COMMISSION, OR OTHER VALUABLE CONSIDERATION WITH ANY BROKER. NO FEE, COMMISSION OR OTHER CONSIDERATION HAS BEEN FIXED BY ANY GOVERNMENTAL AUTHORITY OR BY ANY TRADE ASSOCIATION OR MULTIPLE LISTING SERVICE. NOTHING HEREIN IS INTENDED TO PROHIBIT AN INDIVIDUAL BROKER FROM INDEPENDENTLY ESTABLISHING A POLICY REGARDING THE AMOUNT OF FEE, COMMISSION, OR OTHER VALUABLE CONSIDERATION TO BE CHARGED BY THE BROKER IN THIS TRANSACTION.

Owner Initials _____ _____ _____ _____

a.   TOTAL COMPENSATION:

   i.   SALE: If this is an exclusive agreement and before the Expiration Date, including any protection period as set forth in Section 5 below, the Property is sold and/or exchanged, the subject of an offer or under contract, regardless of who brought about such sale or exchange (including the Owner), or, if this is a non-exclusive agreement, and before the Expiration Date, including any protection period as set forth in Section 5 below, the Property is sold and/or exchanged, the subject of an offer or under contract to a buyer introduced to the Property by the Listing Broker or otherwise procured by the Listing Broker, the Owner shall pay a **total gross commission of** ___4.5%___ to the Listing Broker. The commission shall be due and payable upon closing of title. In the event of an exchange, the listing price shall be considered the sale price.

   ii.   LEASE: If this is an exclusive agreement, and before the Expiration Date, including any protection period as set forth below in Section 5, the Property, or a portion of the Property, is leased, regardless of who brought about such lease (including the Owner), or if this is a non-exclusive agreement, and before the Expiration Date, including any protection period as set forth below in Section 5, the Property, or a portion of the Property, is leased by a tenant introduced the Property by Listing Broker or otherwise procured by Listing Broker, the Owner shall pay a **total gross commission** to the Listing Broker of (choose one): _____% of the total rent payable during the term of the lease; _____month(s) rent; or as follows:_____.

   The commission shall be payable (check one) [ ] upon execution of the lease; [ ] in equal monthly installments over the term of the lease or as follows:_____.

   If the tenancy continues beyond the initial term, the Owner shall pay a commission on all renewals or extensions, pursuant to the provisions of the preceding sentences. If during the term of the lease or any extension or renewal thereof, the tenant purchases the Property, **a total gross commission of** _____shall be paid by the Owner to the Listing Broker upon closing of title.

b.   SHARING OF COMPENSATION:

LISTING BROKERS USUALLY COOPERATE WITH OTHER BROKERAGE FIRMS BY SHARING INFORMATION ABOUT THEIR LISTINGS AND OFFERING TO PAY PART OF THEIR COMMISSION TO THE FIRM THAT PRODUCES A BUYER. THIS IS GENERALLY REFERRED TO AS THE "COMMISSION SPLIT."

SOME LISTING BROKERS OFFER TO PAY COMMISSION SPLITS OF A PORTION OF THE GROSS COMMISSION, USUALLY EXPRESSED AS A PERCENTAGE OF THE SELLING PRICE, LESS A SIGNIFICANT DOLLAR AMOUNT. OTHER LISTING BROKERS OFFER A PORTION OF THE GROSS COMMISSION LESS ONLY A MINIMAL LISTING FEE OR LESS ZERO.

THE AMOUNT OF COMMISSION SPLIT YOUR BROKER OFFERS CAN AFFECT THE EXTENT TO WHICH PROPERTY IS EXPOSED TO PROSPECTIVE BUYERS WORKING WITH LICENSEES FROM OTHER BROKERAGE FIRMS. ON THIS LISTING, THE BROKER IS OFFERING A COMMISSION SPLIT OF ___2%___MINUS ___0___TO POTENTIAL COOPERATING BROKERS.

IF YOU FEEL THAT THIS MAY RESULT IN YOUR PROPERTY RECEIVING LESS THAN MAXIMUM EXPOSURE TO BUYERS, YOU SHOULD DISCUSS THOSE CONCERNS WITH THE LISTING SALESPERSON OR HIS/HER SUPERVISING BROKER.

BY SIGNING THIS LISTING AGREEMENT THE OWNER(S) ACKNOWLEDGE HAVING READ THIS STATEMENT ON COMMISSION SPLITS.

If the blanks in Section 4(b); above for the commission splits are not filled in, the following shall be treated as if written in the blank spaces in Section 4(b) above, and the Owner hereby authorizes the Listing Broker to deal with the following as "cooperating firms" and for the Listing Broker to share commission with cooperating firms as follows: *(check and complete appropriate lines)*

SALES:
Subagents:          [✔] No   [ ] Yes   Offer: ___0___
Buyer Brokers:       [ ] No   [✔] Yes   Offer: ___2%___
Transaction Brokers:  [ ] No   [✔] Yes   Offer: ___2%___

LEASES:
Subagents:          [ ] No   [ ] Yes   Offer: _____
Buyer Brokers:       [✔] No   [ ] Yes   Offer: _____
Transaction Brokers:  [ ] No   [✔] Yes   Offer: ___N/A___

Owner Initials ___M___ _____ _____ _____

The Owner agrees and acknowledges that the dollar amount of the commission shall be a lien (a legal claim) on the purchase money proceeds derived from the sale of the Property and/or the rents derived from leasing the Property. The Owner, by executing this agreement, authorizes and directs the party disbursing the closing proceeds to pay to the Listing Broker, and any cooperating broker(s) the full commission as set forth above out of the proceeds of the sale, prior to the payment of any funds to the Owner or other lienholders.

c.    DUAL AGENCY/DESIGNATED AGENCY:  For the purposes of this Agreement, in dual agency and/or designated agency situations, the Owner hereby agrees to pay a commission to the Listing Broker for representing the buyer/tenant in accordance with any commission split approved by the Owner for Buyer Brokers above,  unless otherwise noted in Section 16 below.

5.    **PROTECTON PERIOD:**  If a lease or a contract for the sale or exchange of the property or any other agreement for the transfer of the property is executed within a period of _____days after the Expiration Date or any extension thereof (the "protection period") to a prospective buyer or lessee who in the case of an exclusive agreement, was introduced to the Property during the term of this agreement, or a non-exclusive, was shown the Property by the Listing Broker during the Term of this agreement, the Owner shall pay to the Listing Broker a commission as described in Section 4 above, irrespective of when the closing date or commencement date of the lease occurs. However, the Owner shall not be obligated to pay such commission if a bona-fide listing agreement is entered into during the protection period with another licensed real estate broker, and a sale, lease or exchange of the property is made.

6.    The Owner agrees to indemnify and hold harmless the Listing Broker from any claim arising out of personal injuries to a tenant or other persons injured in or on the Property.

7.    The Owner (check one) [_] agrees to permit [✗] does not agree to permit a sign to be placed upon the Property by the Listing Broker.

8.    The Owner (check one) [✗] agrees to permit [_] does not agree to permit a lockbox to be placed upon the Property by the Listing Broker.

9.    The Owner (check one) [✗] agrees to permit [ ] does not agree to permit the address of the Property to be placed on the Internet.

10.    The Owner (check one) [✗] agrees to permit [_] does not agree to permit virtual and/or video showings of the Property.

11.    The Owner (check one) [✗] agrees to permit [_] does not agree to permit the advertising of the Property on the Internet, including but not limited to Social Media websites.

12.    **PROPERTY CONDITION DISCLOSURE STATEMENT:**  Pursuant to the 2024 New Jersey Real Estate Consumer Protection Enhancement Act, the Owner of a property for sale is required to provide Listing Broker with a signed property condition disclosure statement filled out by the Owner that will be provided to potential buyers. The Owner agrees to disclose to Listing Broker all material information concerning the physical condition of the Property not otherwise disclosed in the property condition disclosure statement. If the Property is being offered for lease, the Owner will provide the Listing Broker with a signed Landlord's Notice to Tenant Regarding Flood Risk.

13.    If the Property is taken by condemnation through an eminent domain proceeding while the Property is under contract of sale, the Listing Broker shall be entitled to a commission at the rate set forth herein as if the Property had been sold as set forth above.

14.    The Owner agrees that this agreement shall be binding on the heirs, executors, administrators, personal representatives, and assignees of the Owner

15.    This agreement constitutes the entire agreement between the Owner and the Listing Broker with respect to the Property. This agreement may only be modified or amended by a writing signed by the Owner and the Listing Broker.

16.    **ADDITIONAL PROVISIONS:**  _IF KEVIN WARD SELLS THIS PROPERTY TO HIS OWN BUYER THE TOTAL COMMISSION WILL BE REDUCED TO 4.25%_

IF THE OWNER DOES NOT UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT, LEGAL ADVICE SHOULD BE SOUGHT BEFORE SIGNING.

| Witness | Date | Owner, Partner or Corporate Legal Signature | Date |
|---|---|---|---|
| _(signature)_ | 3/10/26 | x _(signature)_ | 3/10/26 |
| Salesperson | Date | Owner, Partner or Corporate Legal Signature | Date |
| _(signature)_ | 3/10/26 | | |
| Accepted by: Listing Broker or Authorized Signature | Date | Owner, Partner or Corporate Legal Signature | Date |
| | | Owner, Partner or Corporate Legal Signature | Date |
| | | Owner, Partner or Corporate Legal Signature | Date |

Owner Initials _____  _____  _____  _____



*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION ON CIVIL RIGHTS
31 CLINTON STREET, 3RD FLOOR
NEWARK, NJ 07102

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

ANDREW J. BRUCK
*Acting Attorney General*

TO:   Property Owners

FROM:   Andrew J. Bruck, Acting Attorney General, State of New Jersey
Rosemary DiSavino, Deputy Director, NJ Division on Civil Rights

DATE:   December 2021

SUBJECT:   Housing Discrimination Laws

---

The New Jersey Real Estate Commission (REC) requires every licensed broker or salesperson with whom you list your property to give you a copy of this notice. The purpose is to help you comply with the New Jersey Law Against Discrimination (LAD) and the Fair Chance in Housing Act (FCHA) (effective January 1, 2022).

### Law Against Discrimination:

Under the LAD, it is illegal to discriminate against a prospective or current buyer or tenant because of actual or perceived race, religion, national origin, nationality, ancestry, pregnancy or breastfeeding, sex, gender identity or expression, sexual orientation, familial status (defined as having care or custody of a child under age 18 or being pregnant), disability, liability for service in the Armed Forces of the United States, marital status, civil union status, or domestic partnership status. It is also illegal to discriminate against a prospective or current buyer or tenant because of any source of lawful income to be used for rental or mortgage payments. And it is illegal to make, print, or publish any statement, including print advertisements and online postings, expressing any preference, limitation, or discrimination based on any of those protected characteristics.

The LAD applies to a wide range of activities, such as advertising, selling, renting, leasing, subleasing, assigning, and showing property (including open land). Here are some issues that come up frequently in enforcing the LAD:

- The prohibition on discrimination based on source of lawful income means, for example, that a landlord cannot reject a prospective tenant because they intend to pay with subsidies or vouchers provided by federal, state, or local rental-assistance programs including Section 8 housing choice vouchers, COVID-19 Emergency Rental Assistance Program (CVERAP),



http://www.njcivilrights.gov

New Jersey is an Equal Opportunity Employer



State Rental Assistance Programs (SRAP), temporary rental assistance (TRA), Eviction Prevention Program (EPP), unemployment benefits, child support, alimony, and supplemental security income. A housing provider cannot advertise a property in any way that discriminates based on source of lawful income, including by posting advertisements that state, directly or indirectly, a refusal to accept, or express any limitation on, vouchers or subsidies. For example, advertisements that state "No Section 8," "TRA not accepted," or "This property not approved for Section 8" violate the LAD. In addition, housing providers must calculate any minimum income requirement, financial standard, or income standard based only on the portion of the rent to be paid by the tenant, rather than the entire rental amount.

- The LAD prohibits bias-based harassment in housing, including sexual harassment. If a tenant is being subjected to bias-based harassment that creates a hostile environment, and if the housing provider knew or should have known about it, the housing provider must take reasonable steps to stop it. That includes harassment by other tenants and by a housing provider's agents or employees. "Quid pro quo" sexual harassment—for example, where a building superintendent demands sex or sexual favors as a condition of making necessary repairs—is also prohibited.

- Housing providers must reasonably accommodate tenants with disabilities unless doing so would be an undue burden on their operations. For example, if a tenant shows they have a disability and that keeping an emotional support animal is necessary to afford them an equal opportunity to use and enjoy the dwelling, the housing provider must permit the emotional support animal, even despite a "no pets" policy, unless they can show that doing so would be an undue burden.

- A "no pets" rule cannot be enforced against a person with a disability who has a service or guide animal. A landlord may also not charge a tenant with a disability an extra fee for keeping a service or guide animal.

- Landlords must permit a tenant with a disability—at that tenant's own expense—to make reasonable modifications to the premises if such modifications are needed to give the tenant an equal opportunity to use or enjoy the dwelling.

- The LAD prohibits discrimination based on "familial status"—for example, discrimination against families with children under the age of 18 and pregnant people. Landlords similarly cannot use unreasonable occupancy restrictions to prevent families with children from moving in.

- Selectively inquiring about, or requesting information about and/or documentation of, a prospective tenant's or buyer's immigration or citizenship status because of the person's actual or perceived national origin, race, or ethnicity, or otherwise discriminating on such a basis, is a violation of the LAD.

- As explained in the U.S. Department of Housing and Urban Development's April 2016 Guidance document, because of widespread racial and ethnic disparities in the criminal justice system, blanket policies that make all individuals with any prior arrest or criminal conviction

ineligible to rent violate both the LAD and the federal Fair Housing Act because they have a disparate impact based on race or national origin and are not supported by a legitimate business necessity. And housing providers may not use criminal history as a pretext for intentionally discriminating based on race or national origin (for example, by applying criminal-record based restrictions against Black housing applicants but not white housing applicants).

**Penalties.** If you commit a discriminatory housing practice that violates the LAD, you may be subject to penalties up to $10,000 for a first violation, up to $25,000 for a second violation within five years of the first offense, and up to $50,000 for two or more violations within seven years.

**Other remedies.** Victims of discrimination may recover economic damages related to the discrimination (such as having to pay higher rent for another unit), as well as damages for emotional distress, pain, and humiliation. In more egregious cases, a victim may also recover punitive damages.

**Brokers.** The broker or salesperson with whom you list your property must transmit to you every written offer they receive on your property. Brokers and salespersons are licensed by the New Jersey Real Estate Commission and their activities are subject to the LAD as well as general real estate laws of the State and the Commission's own rules and regulations. The broker or salesperson must refuse your listing if you indicate an intent to discriminate on any basis prohibited by the LAD.

## Fair Chance in Housing Act:

The FCHA prohibits housing providers from asking about rental applicants' criminal records on an initial application or otherwise considering an applicant's criminal record in any way, until after they've made a conditional housing offer to the applicant, with limited exceptions as required under federal law. The goal of the FCHA is to ensure that formerly incarcerated and system-involved people have fair access to housing around the state.

Nothing about the FCHA requires landlords or housing providers to consider a person's criminal record in housing. If a housing provider does review an applicant's criminal history after a conditional offer, specific restrictions apply. A housing provider must conduct an individualized analysis of an applicant's criminal record and may only deny housing if withdrawing a conditional offer is necessary to fulfill a substantial, legitimate, and nondiscriminatory interest.

Here are some of the specific requirements for housing providers under the FCHA:

- Housing providers are prohibited from asking about applicants' criminal records until after they've made a conditional housing offer, except for convictions of drug-related criminal activity for the manufacture or production of methamphetamine on the premises of federally assisted housing, or if the applicant is subject to a lifetime registration in a state sex offender registry.

- Even after a conditional offer, a housing provider may not consider arrests or charges that did not result in a criminal conviction, expunged convictions, convictions erased through executive pardon, vacated and otherwise legally nullified convictions, juvenile adjudications of delinquency, and sealed records.

- If a housing provider chooses to consider an applicant's criminal history after a conditional offer, they may only consider:

  - Convictions for murder, aggravated sexual assault, kidnapping, arson, human trafficking, sexual assault, endangering the welfare of a child in violation of N.J.S.2C:24-4(b)(3);
  - Convictions for any crime that requires lifetime state sex offender registration;
  - Any 1st degree indictable offense, or release from prison for that offense, within the past 6 years;
  - Any 2nd or 3rd degree indictable offense, or release from prison for that offense, within the past 4 years; or
  - Any 4th degree indictable offense, or release from prison for that offense, within the past 1 year.

- For a conviction that can be considered, a housing provider must conduct an individualized analysis that includes:

  - Nature and severity of the offense(s)
  - Applicant's age at the time of the offense(s);
  - How recently the offense(s) occurred;
  - Any information the applicant provided in their favor since the offense(s);
  - If the offense(s) happened again in the future, whether that would impact the safety of other tenants or property; and
  - Whether the offense(s) happened on, or was connected to, property that the applicant had rented or leased

- If the housing provider intends to consider criminal history as provided for under the FCHA after a conditional offer, they cannot accept an application fee before disclosing that fact to the applicant, and offering the applicant an opportunity to provide evidence of inaccuracies in their criminal record, other evidence of rehabilitation, or mitigating factors. This requirement can be fulfilled using the Model Disclosure Statement on DCR's website, found at https://www.njoag.gov/wp-content/uploads/2021/12/Model-Disclosure-Statement_12.14.21.pdf.

- If the housing provider withdraws a conditional offer based on criminal record, they must explain in writing their justification for doing so, which can be fulfilled using the Model Notice of Withdrawal on DCR's website, found at https://www.njoag.gov/wp-content/uploads/2021/12/Model-Notice-of-Withdrawal_12.15.21.pdf. An applicant can then request the information the housing provider relied upon, and can submit mitigating information or inaccuracies related to aspects of their criminal record which may be considered under the FCHA, which the housing provider must then consider.

- If the housing provider utilizes any vendor or outside person or entity to conduct a criminal record check on their behalf, they shall take reasonable steps to ensure that the vendor or outside person or entity is conducting the criminal record check consistent with the requirements of the FCHA. The housing provider will be liable under the FCHA for relying

on a criminal history inquiry conducted by a vendor or outside person or entity that is conducted in violation of the FCHA if it failed to take reasonable steps to ensure compliance.

- Housing providers are prohibited from discriminating against those with criminal records in any advertising, notices, or publications. They also cannot require applicants to submit to drug or alcohol testing, or to provide information from a treatment facility.

**Penalties.** If you violate the FCHA, you may be subject to penalties up to $1,000 for a first violation within five years of the complaint, up to $5,000 for a second violation within five years of the complaint, and up to $10,000 for two or more violations within seven years.

**Other remedies.** DCR may also authorize other remedies depending on the circumstances.

For more information about the LAD, the FCHA, or if you have other questions about discrimination in the sale or rental of real property, including how to report a complaint, please visit **www.NJCivilRights.gov** or call our Housing Hotline at **(866) 405-3050**. DCR has a number of fair housing fact sheets that are available at **https://www.nj.gov/oag/dcr/housing.html**. Thank you.


Andrew J. Bruck
Acting Attorney General

Rosemary DiSavino
Deputy Director, Division on Civil Rights

DATE: _____

Licensed Broker or Salesperson:

KEVIN WARD
Print name

Signature

Property Owner:

SALVATORE FAENZA
Print name

Signature